UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR QUILES,

                              Petitioner,

           - against -

PAUL CHAPPIUS, JR.,

                              Respondent.

12 Civ. 8345(VB)(PED)

REPORT AND
RECOMMENDATION

TO:   THE HONORABLE VINCENT L. BRICCETTI,
      UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

Proceeding *pro se*, Victor Quiles ("Petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Petitioner challenges his August 31, 2007 Westchester County conviction, where a jury found him guilty of burglary, petit larceny, and possession of stolen property (DiBella, J.).  The matter comes before me pursuant to an Order of Reference dated November 29, 2012.  (Dkt. 6.)  For the reasons set forth below, I respectfully recommend that the petition be **DENIED**.

## II.  BACKGROUND[1]

### A.      The Crime and Arrest

On November 3, 2006, Oscar Benegas ("Benegas") returned home from work around 1:45 p.m.  Benegas rented a room in a basement apartment at 136 Elm Street in Yonkers, New York.  Benegas's room featured a door to a common hallway as well as an exterior door leading to the backyard.  Benegas and a friend went to eat lunch at a restaurant located on the first floor

---

[1] Unless otherwise indicated, the information within this section is taken from a review of Respondent's Affidavit in Opposition to Petition for a Writ of *Habeas Corpus* ("Resp't's Aff.") (Dkt. 14) and Respondent's Memorandum of Law ("Resp't's Mem.") (Dkt. 15).

of Benegas's building when another friend alerted them that someone was breaking into the apartment below.  Benegas and his friends ran to the backyard and watched as the rear door to Benegas's room opened and Petitioner emerged.  Benegas could see that that one of his bureau drawers was open and a shirt that he kept in there was lying on his bed.  Benegas later determined that 12 to 15 dollars worth of quarters that Benegas kept in the drawer was also missing.

After a brief confrontation, Petitioner fled and the men followed.  When Petitioner entered a deli several blocks away, they called the police.  Officers arrived, whereupon Benegas and his friend identified Petitioner as the individual they saw leave Benegas's room.  A mound of quarters was found on the deli's counter and an employee informed police that Petitioner had placed them there.  Police then arrested Petitioner and transported him to the police station.  An officer read Petitioner his <u>Miranda</u> rights.[2]  Petitioner waived his rights and made several statements to police.  In Petitioner's pocket the police found a pair of glasses that Benegas later confirmed were his.  Petitioner then requested a lawyer and the interview ended.

**B.    Indictment**

On January 5, 2007, a grand jury indicted Petitioner on the following offenses:

(1)    1 count of burglary in the second degree, in violation of N.Y. Penal Law § 140.25(2), a class C felony;[3]

(2)    1 count of petit larceny, in violation of N.Y. Penal Law § 155.25, a class A misdemeanor;[4] and

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3] "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and where . . . [t]he building is a dwelling."  N.Y. Penal Law § 140.25(2).

[4] "A person is guilty of petit larceny when he steals property."  N.Y. Penal Law § 155.25.

> (3)   2 counts of criminal possession of stolen property in the fifth degree, in
> violation of N.Y. Penal Law § 165.40, a class A misdemeanor.[5]

(Resp't's Mem. of Law & Exhs., at Ex. 1 (Dkt. 15).[6])

## C.   Pretrial Proceedings

Petitioner was arraigned on January 17, 2007 and pled not guilty.  Defense counsel filed a pretrial omnibus motion.  On June 4, 2007, the court held a combined Wade/Mapp/Sandoval/Huntley hearing.[7]  By written decision dated June 6, 2007,[8] the court denied the motions to preclude witness identifications, to suppress statements to police, and to suppress physical evidence.  The court granted in part and denied in part the motion to preclude evidence of Petitioner's prior criminal history.  (Ex. 2.)

## D.   Jury Selection

Jury selection began on June 5, 2007.  Defense counsel made several Batson objections to peremptory challenges made by the prosecutor and alleged that the prosecutor struck jurors based on their race or skin tone.[9]  The last such challenge involved potential juror Kathy Morant, an African-American woman with a degree in psychology.  Morant worked as a bank loan officer and had family who worked in law enforcement.  The prosecution maintained that its

---

[5] "A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."  N.Y. Penal Law § 165.40.

[6] All exhibits cited herein are attached to Respondent's Memorandum (Dkt. 15).

[7] United States v. Wade, 388 U.S. 218 (1967); Mapp v. Ohio, 367 U.S. 643 (1961); People v. Sandoval, 34 N.Y.2d 371 (1974); People v. Huntley, 15 N.Y.2d 72 (1965).

[8] The decision is incorrectly dated June 6, 2006.  (Ex. 2, at 8.)

[9] Batson v. Kentucky, 476 U.S. 79 (1986).

reason for striking Morant was because Morant had stated that her "psychology background" would "probably" "enter into [her] deliberations." (June 7, 2007 T: 320–24 (Dkt. 16).[10]) The trial court allowed the peremptory challenge and struck Morant from the jury.

## E.  Trial and Verdict

Trial began on June 7, 2007.  The jury found Petitioner guilty of one count of burglary in the second degree, one count of petit larceny, and one count of criminal possession of property in the fifth degree (with respect to Benegas's glasses).  The jury acquitted Petitioner of the other criminal possession of stolen property charge (with respect to the quarters).

## F.  Post-Verdict Motion

Prior to sentencing, Petitioner filed a *pro se* application, dated July 16, 2007, in which he moved the trial court to either vacate the judgment of his conviction pursuant to Section 440.10(1) of the Criminal Procedure Law, or set aside the verdict pursuant to Section 330.30(1), on the following grounds:[11]

---

[10] Specifically, Morant's response to the prosecutor's *voir dire* included the following:

[PROSECUTOR]:  . . . [T]he People don't have to prove motive.  If we proved to you that on this date the defendant committed the crimes charged, he's the person who did it and the elements of the crime are established, we don't get into why, the motives behind the people's actions, and there are reasons for that.  We can't always know the reasons why people do things.  I was interested particularly, Ms. Morant, you have a psychology background.  I was wondering if that would be of concern to you.  Thinking why, why did this person do that?  Would that enter into your deliberations?

[MORANT]:  To be honest, probably.  I think everybody has a motive for whatever they do in life, but I would try to stay impartial.

(June 7, 2007 T: 298.)

[11] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ." N.Y. Crim. Proc. Law § 440.10(1).  "At

4

(1)     the evidence was legally insufficient to support a conviction for burglary in the second degree because there was no proof that Petitioner "enter[ed] the dwelling to commit burglary, or petty [*sic*] larceny, . . . [or] any other crime;"

(2)     prosecutorial misconduct;

(3)     false statements were made by the witnesses;

(4)     evidence concerning the glasses was improperly admitted at trial;

(5)     the prosecution withheld material exculpatory evidence from Petitioner;

(6)     the prosecutor improperly used her peremptory challenges to exclude all African-Americans and Hispanics from the jury;

(7)     ineffective assistance of counsel; and

(8)     Petitioner was not competent to proceed with trial because of the medication he was taking.

(Ex. 4.)  By written decision dated January 11, 2008, the court denied Petitioner's motion.  (Ex. 6.)  Petitioner did not appeal this decision.

## G.     Persistent Violent Felony Offender Hearing and Sentencing

The prosecution filed a violent felony statement prior to sentencing.[12]  Petitioner disputed the statement and the court held a hearing.  By written decision dated August 15, 2007, the court determined that Petitioner was a persistent violent felony offender.  (Ex. 3.)  On August 31, 2007, the court sentenced Petitioner, as such, to concurrent terms of eighteen years to life imprisonment on the burglary conviction, one year imprisonment on the petit larceny conviction, and one year imprisonment on the criminal possession of stolen property conviction.

---

any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof . . . ."  Id. § 330.10.

[12]

When information available to the court or to the people prior to sentencing for a violent felony offense indicates that the defendant may have previously been subjected to a predicate violent felony conviction, a statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate violent felony conviction. . . .

N.Y. Crim. Proc. Law § 400.15(2).

5

**H.**     **Direct Appeal**

Through counsel, Petitioner appealed and raised the following claims:

(1)     the evidence was legally insufficient to support the conviction and the verdict was against the weight of credible evidence;

(2)     the trial court erred when it ruled that Petitioner had not established a *prima facie* Batson violation for the prosecutor's peremptory challenges;

(3)     the trial court abused its discretion by permitting the prosecutor to cross-examine Petitioner about three of his prior convictions;

(4)     Petitioner was denied a fair trial "when the trial court was informed by the jury foreman that the jury was unclear on portions of the charge and the trial court merely re-read the original charge to the jury;" and

(5)     the trial court erred in adjudicating Petitioner a persistent felony offender.

(Ex. 7.)

By decision and order dated June 22, 2010, the Second Department remitted the matter and ordered the trial court to hold a hearing in order to determine whether the prosecutor's peremptory challenge of Morant violated Batson.  People v. Quiles, 904 N.Y.S.2d 469, 471 (App. Div. 2010).  The Second Department also concluded that the trial court had properly ruled on Petitioner's other Batson challenges.  Id. at 472.

**I.**     **Remittitur**

On July 28, 2010, the trial court heard oral argument on the Batson issue.  Defense counsel argued that the prosecutor's proffered facially-neutral reason for challenging Morant was pretextual because the prosecutor had already challenged two African Americans and another dark-skinned individual, and no Hispanics or dark-skinned jurors were seated.  He also noted that Morant had stated that she previously had been the victim of an assault and two burglaries, and that she had family members in law enforcement.  Counsel argued this made her a potentially sympathetic juror for the prosecution.  He also noted that Morant worked in a bank and therefore did not utilize her psychology degree in her employment.  Finally, he observed that

6

a potential white juror had stated during *voir dire* that his wife was a clinical psychologist and that he would be curious to consider the defendant's motive. These events, he argued, among other things, made the prosecution's proffered race-neutral reason pretext for discrimination. (July 28, 2010 T: 3–12 (Dkt. 16).) The prosecution rebutted defense counsel and argued that Morant was challenged because, unlike any other potential juror, she specifically stated that her deliberations would probably be affected by her psychology background. Given that the evidence at trial would show that quarters and eyeglasses were stolen, and that defendant had substance abuse problems and was not wealthy, the prosecution was concerned that the juror would be unable to segregate the defendant's motive from the elements of the offenses when deliberating. (July 28, 2010 T: 13–14.)

By written decision, the trial court agreed with the prosecution. It noted that, unlike others, Morant had specifically stated that her degree in psychology would probably affect her deliberations. The court found genuine the prosecution's desire to minimize the risk that a juror would sympathize with the defendant's social and economic situations. Accordingly, it held that the prosecutor's proffered facially-neutral reason for challenging Morant was not pretext. (Ex. 10.)

**J.    Supplemental Appellate Review**

Through counsel, Petitioner submitted a supplemental appellate brief that argued the trial court's decision was erroneous under Batson. (Ex. 11.) By decision and order dated May 31, 2011, the Second Department affirmed the conviction. People v. Quiles, 923 N.Y.S.2d 889 (App. Div. 2011). Petitioner sought leave to appeal this decision to the New York State Court of Appeals. In his letter seeking leave, he identified only two issues for review:(1) the persistent violent felony offender adjudication, and (2) the Batson challenge. (Ex. 14.) The New York

State Court of Appeals denied leave to appeal on March 26, 2012.  People v. Quiles, 18 N.Y.3d

961 (2012).  Petitioner sought a writ of *certiorari* from the United States Supreme Court, which

was denied on October 9, 2012.  Quiles v. New York, 133 S. Ct. 449 (2012).

## K.  **Petition for Federal Writ of *Habeas Corpus***

By *pro se* application dated November 8, 2012, Petitioner seeks a federal writ of *habeas*

*corpus*.  (Dkt. 2.)  The pleading raises the following claims:

(1)   the evidence was legally insufficient to support the conviction and the verdict was against the weight of credible evidence;

(2)   Petitioner's right to equal protection was violated and the trial court erred when it ruled that Petitioner had not established a *prima facie* Batson violation after counsel objected to the prosecutor's peremptory challenges;

(3)   Petitioner was denied a fair trial after the trial court permitted the prosecutor to cross-examine Petitioner about three of his prior convictions;

(4)   Petitioner was denied a fair trial after the trial court merely re-read the original charge to the jury; and

(5)   the trial court erred in adjudicating Petitioner a persistent felony offender.

(Pet. ¶ 12.)  Respondent opposes the petition.  (Dkts. 14–15.)  Petitioner filed a reply.  (Dkt. 22.)

## III. <u>DISCUSSION</u>

## A.  **Applicable Law on *Habeas Corpus* Review**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

      1.     ***Timeliness Requirement***

      A federal *habeas* petition is subject to AEDPA's strict, one-year statute of limitations.

See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the

limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under

the statute, the limitation period is tolled only during the pendency of a properly filed application

for State post-conviction relief, or other collateral review, with respect to the judgment to be

challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

      The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,

130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The

term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

###     2.     *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes

10

interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim.  Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim

11

procedurally barred." <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. <u>See, e.g.</u>, <u>Reyes</u>, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989), or "actual innocence," <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005); <u>see</u> § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>see also, e.g.</u>, <u>Padilla v. Keane</u>, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.  ***Procedural Default***

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  <u>Harris</u>, 489 U.S. at 262; <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). The determination of whether a state procedural rule is "firmly established and regularly followed" requires inquiry into "the specific circumstances presented in the case." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemma, 534 U.S. 362, 386-87 (2002)). The Second Circuit has identified three "guideposts" for making this determination:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether the state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, legitimate government interest.

Id. (citing Lee, 534 U.S. at 381-85).

### 4.     *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits," and reduced its disposition to

judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not

reach the merits" of the federal claim, however, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed *de novo*."

Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is

contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme

Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies

the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the

facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle

from [Supreme Court] precedent to a new context where it should not apply or unreasonably

refuses to extend that principle to a new context where it should apply."  Id. at 407.

> Under § 2254(d), a habeas court must determine what arguments or theories
> supported or . . . could have supported . . . the state court's decision; and then it must
> ask whether it is possible fairminded jurists could disagree that those arguments or
> theories are inconsistent with the holding in a prior decision of [the Supreme] Court.
> . . .  If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings. . . .  It preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . .  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the federal claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (internal quotation marks and citations omitted).

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are presumed to be correct'").  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**     **Application**

1.     ***Claims 1, 3, and 4***[13]

Claim 1 of the petition contends that the evidence was legally insufficient to support Petitioner's conviction and that the verdict was against the weight of credible evidence introduced at trial.  Claim 3 contends that Petitioner's right to a fair trial was denied when the trial court allowed the prosecutor to introduce certain prior convictions into evidence.  Claim 4 contends that Petitioner's right to a fair trial was denied when the trial court simply re-read the original charge to the jury after the foreperson informed the court that the jury was unclear about portions of that charge.  Respondent contends, in part, that some of the claims should be denied

---

[13] I identify Petitioner's claims as I have numbered them in Section II(K) above.

as unexhausted but procedurally barred due to Petitioner's failure to raise them in his letter

seeking leave to appeal.  (See Resp't's Mem., at 4–11, 17–23.)  I agree with Respondent and

recommend that all three claims be denied on this basis.

It is well-settled that, where a letter application seeking leave to appeal discusses specific

claims, those claims not specifically identified are not "fairly presented" to the state's highest

court, and therefore remain unexhausted for purposes of federal _habeas_ review.  McKinnon v.

Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) (citing

Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000)) ("merely including an appellate brief with

a leave application that discusses some but not all of the claims addressed in that brief is

insufficient to inform the New York Court of Appeals that leave is being sought with respect to

claims other than those mentioned in the letter seeking leave to appeal to the Court of Appeals").

Additionally, the Second Circuit has held that, "arguing a single claim at length and

making only passing reference to possible other claims to be found in the attached briefs does

not fairly apprise the state court of those remaining claims."  Jordan v. Lefevre, 206 F.3d 196,

198 (2d Cir. 2000).  In Jordan, the petitioner "forcefully argued [one] claim in the first three

paragraphs of his application for leave, but made no reference to his other claims.  In the fourth

paragraph . . . he asked that he be given permission to appeal '[f]or all of these reasons and the

reasons set forth in his Appellate Division briefs.'"  Id.  The Second Circuit concluded that,

> [A]rguing one claim in his letter while attaching an appellate brief without explicitly
> alerting the state court to each claim raised does not fairly present such claims for
> purposes of the exhaustion requirement . . . .  Counsel may not transfer to the state
> courts the duty to comb through an applicant's appellate brief to seek and find
> arguments not expressly pointed out in the application for leave.

Id. at 198-99.  In contrast, in Morgan, the petitioner did not identify or discuss a specific claim.

Instead, he attached his briefs and "request[ed that the] Court . . . consider and review all issues

16

outlined in defendant-appellant's brief and pro se supplemental brief."  204 F.3d at 369-70

(emphasis and quotation marks omitted).  The Second Circuit held that all claims raised in those

briefs were fairly presented to the state's highest court for purposes of *habeas* review.  Id. at 371.

The Second Circuit later explained that the distinction between Jordan and Morgan lies in

the language of the appellants' requests to the New York Court of Appeals.  Accordingly, the

determination of whether a claim has been "fairly presented" to the state's highest court depends

upon how clear the request to review the claim is–*i.e.*, it is dependent upon what exactly the

appellant requested the court do.  Specifically, in Ramirez v. Attorney General of the State of

New York, 280 F.3d 87 (2d Cir. 2001), the Second Circuit stated that it:

> [P]erceive[s] the line drawn between Morgan and Jordan to be as follows.
> References to attached briefs without more will preserve issues only if the Court of
> Appeals is clearly informed that the reference is asserting issues in those briefs as
> bases for granting leave to appeal.  In Morgan, the language unmistakably requested
> review of each point in the Appellate Division brief.  In Jordan, the words "for all of
> these reasons and the reasons set forth in [the] Appellate Division briefs" might as
> easily have been a reference to additional reasons for reviewing the [specifically
> identified] claim as an incorporation of other, different claims asserted in the lower
> court.

280 F.3d at 97.

Here, appellate counsel's letter application seeking leave to appeal specifically identified

and discussed only the claims involving the predicate felony offender adjudication and the

Batson challenges.  (Ex. 14, at 2.)  The leave application did not "clearly inform[ ]" the court

that Petitioner requested review of any other claim.  Ramirez, 280 F.3d at 97.  Accordingly, the

claims which counsel omitted have not been fairly presented to the state's highest court and

remain unexhausted for purposes of federal *habeas* review.  However, those record-based claims

may now be "deemed" exhausted but procedurally barred because Petitioner may not raise them

17

again in state court and fully exhaust them.  N.Y. Ct. Rules § 500.20(a)(2); N.Y. Crim. Proc.

Law § 440.10(2)(c); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (per curiam).

      In his petition, Petitioner states that he did not fully exhaust Claims 3 and 4 on the advice

of his appellate counsel.  (See Pet., at 10–11; see also Dkt. 22, at 5, 10.)  I construe Petitioner's

statements to allege ineffective assistance of appellate counsel as cause for his procedural

defaults with respect to all three unexhausted claims.  See Haines v. Kerner, 404 U.S. 519, 520-

21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be

liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v.

Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (application submitted by *pro se* petitioner should be

"read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s]'").

      Attorney error may establish cause if it rises to the level of ineffective assistance of

counsel.  Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).  However, it is clear that "ineffective

assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first

presented in state court as an independent constitutional claim."  DiSimone v. Phillips, 461 F.3d

181, 191 (2d Cir. 2006) (citing Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000) and Sweet v.

Bennett, 353 F.3d 135, 141 n.7 (2d Cir. 2003)).  Petitioner has not sought a writ of *error coram*

*nobis* and presented such a claim in state court.  Accordingly, Petitioner cannot establish

ineffective assistance of appellate counsel as cause for his procedural defaults.  See McClesky v.

Zant, 499 U.S. 467, 502 (1991) (where a petitioner fails to establish cause to excuse a procedural

default, the court need not determine whether he suffered prejudice).  Petitioner does not suggest

anything else that would constitute cause, nor does he allege a fundamental miscarriage of

justice, which would permit this Court to circumvent his procedural defaults and review the

merits of the claims.  See Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262.

Accordingly, Claims 1, 3, and 4 must be denied.

**2.**     ***<u>Claim 2</u>***

Petitioner argues in Claim 2 that the trial court's decisions regarding his <u>Batson</u> challenges deprived him of his right to equal protection.  Respondent contends that the state court's decision denying the claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  (<u>See</u> Resp't's Mem., at 12–16.)  Respondent is correct.

The Second Department's decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim 2.  <u>See Ylst</u>, 501 U.S. at 803.  It is clear that the court denied the claim on the merits.  <u>Quiles</u>, 923 N.Y.S.2d at 890.  Accordingly, I address Claim 2 pursuant to AEDPA's deferential standard of review.

The Supreme Court held in <u>Batson</u> that "[a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race."  476 U.S. at 89 (internal quotation marks and citation omitted).  To determine whether a prosecutor's challenge is unconstitutional on this basis, the court must employ a three-step procedure:

> First, the defendant must make out a prima facie case of purposeful racial discrimination by alleging facts which indicate the prosecutor made race-based peremptory challenges.  If the defendant has satisfied this first step, the prosecutor must then offer a race-neutral explanation for the peremptory challenges.  At this stage, the prosecutor's race-neutral explanation does not have to be "persuasive, or even plausible," so long as the explanation is not discriminatory on its face.  Third, the trial court must determine whether the defendant has established purposeful racial discrimination.  At this final stage, the trial court may evaluate the plausibility of the prosecutor's facially race-neutral reason for the strike.

Thompson v. Cunningham, No. 08 Civ. 10458(VB), 2013 WL 3742490, at *9 (S.D.N.Y. June 28, 2013) (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995) and citing Batson, 476 U.S. at 96–98).[14]

The Supreme Court has also held that a trial court's determination of the reason for a prosecutor's peremptory challenge constitutes a finding of fact. Id. (citing Purkett, 524 U.S. at 769, Batson, 476 U.S. at 98 n.21, and Hernandez v. New York, 500 U.S. 352, 365 (1991)). Under AEDPA review, this determination is entitled to considerable deference from a federal court, and is presumed correct unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Thompson, 2013 WL 3742490, at *10.

As described above, the state court determined on retmittitur that under Batson's third step, the prosecutor's proffered race-neutral reason for striking Morant was plausible. (See supra Section II(I); Ex. 10.) This finding is entitled to deference and accordingly, "this Court must presume that the trial court's finding . . . is correct." Thompson, 2013 WL 3742490, at *10. Petitioner presents no evidence–much less clear and convincing evidence–to rebut this presumption. Petitioner's supplemental brief on direct appeal and his reply to Respondent's opposition reiterate the same arguments that defense counsel raised on oral argument. (See Ex. 11; Dkt. 22.) A review of the record reveals that it is reasonable to conclude that the prosecutor's reason not pretextual. Accordingly, given the state court's presumptively correct factual finding, it cannot be said that the Second Department's decision was either contrary to, or an unreasonable application of, Batson. Claim 2 must therefore be denied.

---

[14] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

3.      _Claim 5_

Petitioner argues in Claim 5 that the trial court erred when it adjudicated him as a

persistent felony offender.  Specifically, he contends that the court should not have considered

the time he spent in a temporary release program as "incarceration" under the state sentencing

statute.  Respondent contends, in part, that this claim is not cognizable upon federal _habeas_

review.  (See Resp't's Mem., at 24–26.)  Respondent is correct.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the

sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d

Cir. 1992) (per curiam).  Here, Petitioner was convicted, among other things, of burglary in the

second degree, a class C felony.  N.Y. Penal Law § 140.25.  Under New York's sentencing

statutes, that offense is classified as a violent felony offense.  Id. § 70.02(1)(b).  Under New

York law, a persistent violent felony offender is defined as someone who stands convicted of a

violent felony offense and has had two or more previous predicate violent felony convictions.

N.Y. Penal Law § 70.08(1)(a).  A prior conviction will be classified as a predicate violent felony

conviction if it is a violent felony offense as defined in Section 70.02 of the Penal Law and

occurred within the 10-year period prior to the commission of the defendant's current felony

offense.  Id. § 70.04(1)(b)(i)–(iv).  In calculating the 10-year period, the court must exclude any

period of time that the defendant spent incarcerated for any reason.  Id. § 70.04(1)(b)(v).

Petitioner does not dispute the trial court's findings as to his criminal history or to the

classification of certain convictions as violent felony offenses.[15]  He argues only that his

---

[15]As of November 3, 2006, the date of the underlying burglary offense, Petitioner's
criminal history included the following:
-      On May 31, 1989, Petitioner was convicted of attempted burglary in the second
       degree, a class D violent felony offense, and sentenced to 5 years probation.  N.Y.

participation in a temporary release program from September 27, 1995 through February 27, 1997 did not constitute "incarceration" for purposes of Section 70.04(1)(b)(v). Accordingly, he maintains that the 518 days spent in the program should not be excluded from calculation of the 10-year window during which predicate violent felony convictions are counted. Under Petitioner's formulation, he would not have qualified for enhanced sentencing as a persistent violent felony offender.

---

Penal Law §§ 70.02(1)(b)–(c); 110.00; 110.05(5); 140.25. He violated the terms of his probation and on June 19, 1989, was re-sentenced to another 5 years probation. He was also incarcerated from June 2, 1989 through July 21, 1989, for a total of 49 days.

-   On September 7, 1989, Petitioner was convicted of two counts of burglary in the second degree, class C violent felony offenses, and sentenced to concurrent terms of 1½ to 4 years imprisonment. Id. §§ 70.02(1)(b); 140.25. He was incarcerated from June 2, 1989 through January 15, 1991, for a total of 592 days.

-   On April 2, 1992, Petitioner was convicted of burglary in the second degree, a class C violent felony offense, and sentenced as a violent predicate felony offender to 6 to 12 years imprisonment. Id. He was incarcerated from March 2, 1992 through September 26, 1995, for a total of 1667 days. Petitioner then participated in a temporary release program through the New York State Department of Corrections from September 27, 1995 through February 27, 1997, which totaled an additional 518 days. He was released to parole on February 27, 1997.

-   On November 27, 1998, Petitioner violated the terms of his parole and was convicted of attempted petit larceny, a class B misdemeanor, and sentenced to 30 days imprisonment. Id. §§ 110.00, 110.05(8), 155.25. He was incarcerated from November 27, 1998 through February 9, 1999, for a total of 74 days.

-   On May 11, 2004, Petitioner was convicted of resisting arrest, a class A misdemeanor, and sentenced to time served. Id. § 205.30. He was incarcerated from April 18, 2004 through May 12, 2004, for a total of 24 days.

-   On June 12, 2004, Petitioner was convicted of commercial bribe receiving in the second degree, a class A misdemeanor, and sentenced to 6 months imprisonment. Id. § 180.05. He was incarcerated from June 14, 2004 through October 29, 2004, for a total of 137 days.

(See Ex. 3.)

The state court rejected Petitioner's argument and determined that the temporary release program constituted "incarceration" under New York law.  (Ex. 3, at 1–2.)  It is well-settled that a federal writ of *habeas corpus* may be issued only where a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  As such, "[f]ederal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 779 (1990); see Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); see also, e.g., Rodriguez v. Lee, No. 10 Civ. 396(VB), 2013 WL 6410766, at *2 (S.D.N.Y. Dec. 9, 2013) (petitioner's argument that his prior convictions were not predicate violent felonies for purposes New York's persistent violent felony offender statute constituted an issue of state law that was not cognizable upon federal *habeas* review).

Accordingly, Claim 5 must be denied.

## IV.  CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the petition should be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated: May 30, 2014
　　　　　White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge

23

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to those objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Vincent L. Briccetti, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Briccetti.

A copy of the foregoing Report and Recommendation has been sent to the following:

Victor Quiles
07-A-4959
P.O. Box 500
Elmira, NY 14902